## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**MARIE VERONICA MARKING**                                        **PLAINTIFF**

**v.**                          **CASE NO. 4:24-CV-00610-BSM**

**COSTCO WHOLESALE CORPORATION**                         **DEFENDANT**

### <u>ORDER</u>

Costco Wholesale Corporation's motion for summary judgment [Doc. No. 35] is granted and Veronica Marking's complaint is dismissed with prejudice.

### I. BACKGROUND

Marking and her boyfriend, Matthew Legault, worked at Costco's Little Rock warehouse. *See* Statement of Undisputed Facts ("SUMF") ¶ 3, Doc. No. 37. Marking served in various management positions before becoming receiving manager. *Id*. ¶¶ 3–5.

In October 2022, Marking told Costco's Regional Vice President, Mike Casebier, that there was a lack of diversity in management and that retaliation and discrimination were occurring in the warehouse. *Id*. ¶ 22. She also told Casebier that employees were being bullied and threatened; too many white males had been promoted to management positions; female employees were being denied promotions because of their sex and previous romantic relationships with managers; and derogatory comments were being made about transgender people. *See* Doc. No. 37, Ex. 14.

In January 2023, Marking spoke with a human resources representative regarding her conversation with Casebier. SUMF ¶ 23. She then emailed human resources a summary of

the concerns she had reported to Casebier.  *Id.* ¶ 26.

In June 2023, Marking applied for the assistant general manager position, but was not selected.  *Id*. ¶ 27.  Costco transferred a female employee from another warehouse to fill the position instead of promoting Marking or one of the two male candidates who were interviewed.  *Id*. ¶¶ 28–30.

In September 2023, Marking filed a complaint against her general manager, Tom Zeien, alleging he had discriminated and retaliated against her and other employees on the basis of sex and sexual orientation, made unfair staffing decisions, and failed to follow procedure, especially with regard to hiring, disciplining, and promoting employees.  *Id*. ¶¶ 32–33; Doc. No. 37, Ex. 21.  Marking also sent human resources several emails detailing her complaints against Zeien.  *Id*. ¶ 37.  An investigation into Marking's allegations was conducted in which Marking and numerous witnesses were interviewed, and a report substantiating several of Marking's claims was issued several months later.  *Id*. ¶¶ 39–41; Doc. No. 37, Ex. 26.

In October 2023, Legault reported possible cybersecurity threats to Costco's service desk.  SUMF ¶¶ 52–53.  Costco's information security department ("InfoSec") investigated Legault's claims but could not substantiate them.  *Id*. ¶¶ 56, 59.  Legault believed that InfoSec misunderstood his claim, so he emailed InfoSec hundreds of pages of files in November 2023 containing Costco data with his own annotations to demonstrate that the network had been hacked.  *Id*. ¶ 61.  When InfoSec did not respond, Legault continued his research.  *Id*. ¶ 62; Plaintiff's Statement of Facts ¶ 62, Doc. No. 38; Legault Dep. 97:14–20,

Doc. No. 37, Ex. 8.

In late January 2024, InfoSec issued a report stating that 6,147 Costco documents were downloaded from the Little Rock warehouse to a shared drive, and were sent to a personal email address linked to Legault. *Id*. ¶¶ 64–66; Doc. No. 37, Ex. 45. Although Marking and Legault dispute the findings of the report, Legault admits to gathering "as many files as possible from warehouse computers and send[ing] them to his personal account" so he could investigate the files at home. *Id*. ¶ 76. Legault also admits that he staged Costco's files and downloaded them to his personal email. Legault Dep. 23:7–10. The report states that Marking told investigators she was aware Legault committed the data breach; however, Marking disputes making this statement. SUMF ¶ 93.

Based on InfoSec's report, Costco fired Marking in February 2024 for engaging in serious misconduct and for violating the managers' standard of ethics, which required her to report Legault's actions when she became aware of them. *Id*. ¶¶ 10–13; 110–11.

Marking is suing Costco for sex discrimination and retaliation under Title VII of the Civil Rights Act and the Arkansas Civil Rights Act ("ACRA"). She alleges Costco fired her because she is a woman and in retaliation for reporting misconduct and harassment in the workplace. She also appears to claim that she was denied a promotion because of her sex. Costco is moving for summary judgment on all claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

### A.      Title VII: Discrimination

Summary judgment is granted on Marking's discrimination claims because she has failed to make out a prima facie case on both her termination and failure to promote claims and has failed to show pretext on her termination claim.

#### 1. Termination

Since Marking does not have direct evidence that she was terminated based on her sex, she asserts that discrimination can be inferred from Costco's actions. *See Harris v. Hays,* 452 F.3d 714, 717–18 (8th Cir. 2006); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This requires Marking to establish a prima facie case of discrimination. *Id.* If she does so, Costco must provide legitimate non-discriminatory reasons for its actions. *Id.* Marking must then show Costco's reasons are pretext for discrimination. *Id.*

a.      Prima Facie Case

4

To establish a prima facie case, Marking must show that (1) she is a member of a protected class; (2) she met Costco's expectations; (3) she suffered an adverse employment action; and (4) the circumstances create an inference of discrimination. *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 964 (8th Cir. 2023). While it is undisputed that Marking satisfies the first three elements, Costco argues that discrimination cannot be inferred from the circumstances. Marking argues that an inference of discrimination arises because two men, Mike Morris and John Kruse, also supervised Legault but were not fired after InfoSec issued its report on the data breach. *See* Pl.'s Br. Supp. Opp. Def.'s Mot. Summ. J. ("Marking Br."), Doc. No. 39 at 6.

The problem with Marking's argument is that she is not similarly situated to Morris and Kruse. *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 809 (8th Cir. 2020) (comparator must be similarly situated in all relevant respects). Marking was fired for failing to report Legault for downloading documents from Costco's secure network when she became aware of his actions. *See* Infosec Report, Doc. No. 37, Ex. 44. The report of the investigation into the data breach, upon which Costco relied in making the determination to fire Marking, reported that she admitted she was aware that Legault engaged in the data breach. *Id.* It is undisputed that Marking and Legault were in a romantic relationship and lived together. *See* Marking Dep. 34:22–25; SUMF ¶ 57. Thus, it was reasonable for Costco to accept Infosec's finding that Marking had knowlege of Legault's actions. On the other hand, there is no allegation that Morris or Kruse had, or should have had, knowledge that Legault was downloading documents from Costco's secure network. Therefore, Morris and

Kruse were not similarly situated to Marking. *See Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (plaintiff must show comparator that was not fired for engaging in similar conduct).

> b.      Legitimate, Nondiscriminatory Reason

Even if Marking can establish a prima facie case, Costco has provided a legitimate, nondiscriminatory reason for firing her: she violated Costco's manager standard of ethics by failing to report Legault's misappropriation of Costco files. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (violation of company policy is a legitimate, nondiscrimination reason).

> c.      Pretext

Marking presents seven arguments in favor of her position that Costco's reason for firing her is pretext:  (1) a female co-worker who Marking claims also suffered retaliation; (2) a less senior male co-worker who was promoted before her; (3) a general manager's stray remarks; (4) comparator evidence; (5) shifting explanations regarding her termination; (6) Costco's alleged lack of basis for its reason to fire her; and (7) Costco's alleged "sham" investigation of the data breach.

First, Marking states that general manager Tom Zeien retaliated against Elizabeth Zarazoga when she filed a complaint against him.  This, however, does not show pretext in Marking's case.  The mere fact that Zeien may have retaliated against Zarazoga is not enough to show that Marking was retaliated against.  Zeien played no part in the decision to fire Marking, and was himself fired after the Infosec report was issued.

Second, Marking points out that a male manager, John Kruse, who had less seniority and experience than her, was promoted to a management role before Marking despite a prior demotion for failing to disclose a workplace relationship.  Marking claims this decision supports a finding of bias and discriminatory motive on the basis of sex.  This does not indicate pretext, however, because Marking presents no evidence indicating the decision to promote Kruse to management before her was based on her sex or related to her termination.

Third,  Marking claims that general manager Tom Zeien exhibited favoritism toward male employees and criticized her "attendance issues" and her failure to provide "concrete answer[s]."  These generalized statements are not enough to support a finding of pretext.  *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 923 (8th Cir. 2000) (finding of discrimination supported when stray remarks raised a reasonable inference that adverse action was based on protected characteristic).

Fourth, Marking's attempt to show pretext with her comparators fails because, as previously discussed, the employees she identifies are not similarly situated. *Johnson*, 769 F.3d at 613 (comparator test at pretext stage is rigorous).

Fifth, Marking argues that Vice President Kim Brown's shifting explanations for her termination show pretext.  This argument fails because Brown's explanations have not changed over time.  Brown has consistently stated that Marking was fired because she knew that Legault was removing confidential sensitive data from the Costco warehouse and failed to report it.  *See E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006) (discrepancies must be substantial); *Fatemi v. White*, 775 F.3d 1022, 1048 (8th Cir. 2015)

(where employer has not waivered from its explanation for terminating the employee, there is no substantial change).

Sixth, Marking argues that Costco's explanation for her firing is not believable because it has no basis in fact. This argument is not convincing because Infosec's report provided a legitimate basis for Marking's termination. Although Marking argues the contents of the report are false, it is undisputed that she was fired based on the report's findings, and she testified that she had no evidence indicating the drafters falsified the report or that the decision-makers had reason to doubt its contents, and she offers no such proof now. *See* Marking Dep. 123:1–124:25; 128:18–130:4; *see also Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (courts do not reexamine business decisions . . . the inquiry is limited to whether employer gave an honest explanation for its behavior). Moreover, even if its belief was mistaken, Costco had sufficient information to reasonably believe that Marking violated company policy based on the report, and Marking fails to show otherwise. *See McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 861–862 (8th Cir. 2009) (inquiry is not whether employee actually engaged in conduct for which she was terminated, but whether employer believed in good faith that the employee was guilty of the conduct justifying discharge); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (legitimate, nondiscriminatory reason need not be correct if employer had honest belief that violation occurred). Marking's arguments to the contrary are unsupported, self-serving statements, from which a reasonable inference cannot be drawn. *See Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (merely pointing to unsupported self-serving

allegations without sufficient probative evidence is not enough).

Seventh, Marking's attempt to show pretext by claiming that Costco's investigation of the data breach was a "sham" fails because the method and scope of internal investigations is a business judgment, generally not reviewed by courts. *Bey v. Good Day Farm*, No. 4:22-CV-01292-KGB, 2025 WL 2670887, at *12 (E.D. Ark. Aug. 7, 2025) (citing *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (citations omitted)). Although Marking says that one of the investigators, Fred Helm, admitted to having no evidence that she knew of Legault's misconduct, this is not supported by the record because Helm testified that Marking confessed to him that "she was aware of [Legault's] behavior." Helm Dep. Doc. No. 37, 12:21–24.  Regardless, a shortcoming in an internal investigation, without more, is not enough to support a finding of pretext. *See Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1127 (8th Cir. 2017) (referencing *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 795 (8th Cir. 2011)).

Ultimately, other than speculation and her personal beliefs, Marking has failed to factually support her assertion that Costco fired her because she is a woman.  Summary judgment is therefore granted.

### 2.  Failure to Promote

To the extent that Marking claims Costco sexually discriminated against her by failing to promote her to assistant manager, summary judgment is granted because she cannot show that a similarly situated person, who was not part of her protected class, received the position. *See Allen v. Tobacco Superstore Inc.*, 475 F.3d 931, 937 (8th Cir. 2007) (forth element of

prima facie case).  This is true because another woman was awarded the position.

B.      Title VII: Retaliation

Summary judgment is granted on Marking's retaliation claim because she cannot show that her termination is related to her complaints of discrimination.  To succeed on her retaliation claim, Marking must first show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the two.  *See Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016).  Then, Marking must show that Costco's legitimate, non-retaliatory reason for the action is pretext.  *See Mitchell v. Iowa Prot. & Advocacy Servs., Inc.*, 325 F.3d 1011, 1013 (8th Cir. 2003).

Although Marking engaged in protected activity by filing a complaint in September 2023 and suffered an adverse employment action when she was fired in February 2024, nothing connects the two.  The mere fact that she was terminated four months after filing the complaint does not permit an inference of retaliation.  *See Cheshwalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) (four-week interval between complaint and termination, without more, not enough to show causal connection); *Onyiah v. St. Cloud State Univ.*, 5 F.4th 926, 930 (8th Cir. 2021) (even lapse of two months between protected activity and adverse employment action does not create an inference of causation).

C.      Arkansas Civil Rights Act

Summary judgment is granted on Marking's ACRA claims because ACRA claims are analyzed similarly to Title VII claims.  *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011) (discrimination); *Wallace v. Sparks Health Sys.*, 415 F.3d 853,

860–61 (8th Cir. 2005) (retaliation).  Since Marking's Title VII claims fail, her ACRA claims do too.

## IV. CONCLUSION

For these reasons, Costco's motion for summary judgment is granted, and Marking's complaint is dismissed with prejudice.

IT IS SO ORDERED this 10th day of April, 2026.

UNITED STATES DISTRICT JUDGE